**DIJAS CAPITAL, LLC, Petitioner**

v.

**DEPARTMENT OF COMMUNITY AND ECONOMIC DEVELOPMENT, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 31, 2009.
Decided April 28, 2009.

Jennifer L. McGrath, Langhorne, for petitioner.

Charles Rees Brown, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, PELLEGRINI, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Before this Court is a petition for review filed by Dijas Capital, LLC (Dijas) from what it alleges is a final adjudication of the Department of Community and Economic Development (Department) awarding it $20,868.25 in enterprise zone tax credits under the Neighborhood Assistance Act. Also before us is a motion to quash filed by the Department alleging that Dijas may not file a petition for review because there was no final adjudication of tax credits that was subject to judicial review.

This case involves the Neighborhood Assistance Act (Act)[1] which offers tax credits as encouragement to businesses to rehabilitate, expand or improve buildings or land in impoverished communities that are designated as "Enterprise Zones."[2] Sections 1903–A and 1904–A of the Act, 72 P.S. §§ 8903–A, 8904–A. *See also* 12 Pa.Code

§§ 135.2, 135.3 "Impoverished areas" is defined under the Act as "[a]ny area in this Commonwealth which is certified as such by the Department of Community and Economic Development and the certification is approved by the Governor. Such certification shall be made on the basis of Federal census studies and current indices of social and economic conditions." Section 1902–A, 72 P.S. § 8902–A.[3] "Enterprise Zones" are defined as "[s]pecific locations with identifiable boundaries within impoverished areas which are designated as enterprise zones by the Secretary of Community and Economic Development." Section 1902–A of the Act, 72 P.S. § 8902–A.

In order to receive tax credits under the Act, the business must submit a proposal to the Department and then it must be approved by the Secretary. The proposal of the business must set forth the program to be conducted, the impoverished area selected, the estimated amount to be invested in the program and the plans for implementing the program. *See* Section 1904–A of the Act, 72 P.S. § 8904–A; 12

---

1. Act of March 4, 1971, P.L. 6, added by the Act of June 16, 1994, 72 P.S. §§ 8901–A–8907–A.

2. Section 1903–A of the Act explains the public policy in full as follows:

    It is hereby declared to be public policy of this Commonwealth to encourage investment by business firms in offering neighborhood assistance and providing job training, education, crime prevention and community services, to encourage contributions by business firms or neighborhood organizations which offer and provide such assistance and services and to promote qualified investments made by private companies to rehabilitate, expand or improve buildings or land which promote community economic development and which occur in portions of impoverished areas which have been designated as enterprise zones.

3. Pursuant to 12 Pa.Code, § 135.11, "the Department will certify as impoverished those basic census units, parts of census units or combinations of adjacent census units which, in comparison to Statewide averages, which have high incidence of any of the following social conditions:

    (1) Persistent unemployment or underemployment.
    (2) Dependence upon public assistance.
    (3) Overcrowded, unsanitary or inadequate housing.
    (4) Crime and delinquency.
    (5) [Reserved.]
    (6) Disease or disability.
    (7) Infant mortality.
    (8) School dropouts or other evidence of low educational attainment.
    (9) Other generally accepted indicators of widespread social problems or poverty conditions."

Pa.Code §§ 135.47, 135.48. Pursuant to Section 1904–A(f), the tax credit approved shall be applied against the business firm's tax liability for the taxes for the current taxable years as of the date on which the credit was approved. Under Section 1905–A of the Act, 72 P.S. § 8905–A, the tax credit may be granted for 25% of the total amount contributed during the taxable year by a business or 25% of qualified investments by a private company in programs approved pursuant to Section 1904–A of the Act; 12 Pa.Code § 135.50. The Secretary will notify the business of his/her decision to approve or disapprove a proposal in writing. If it approves the proposal, it shall state the maximum credit allowable to the business. Section 1906–A of the Act, 72 P.S. § 8906–A; 12 Pa.Code § 135.48. The total amount of tax credit granted for programs approved under the Act cannot exceed $18 million. 72 P.S. § 8904–A. The Act does not provide for an appeal process from the denial of a proposal or from the grant of a proposal for less than the requested amount.

Regarding this appeal, Dijas owns property in Bucks County, Pennsylvania, in an enterprise zone consisting of a 19,000 square-foot building that it leases to Irene's Bakery and Gourmet Kitchen.[4] Dijas purchased the building for $1,050,000 and spent an additional $83,473 in construction and renovation costs to improve the property.[5] On June 1, 2007, pursuant to Section 1904–A(a) of the Act, 72 P.S. § 8904–A(a), Dijas submitted an application to the Department seeking a tax credit under the Act for fiscal year 2007–2008, along with letters of support from Bucks County agencies.

By letter dated August 1, 2007, the Department acknowledged receipt of Dijas' application and assigned it control # 200707071105. It advised Dijas that the application was incomplete because it lacked sufficient information to "render a fair review" of the request. The letter noted: "Prior to the start of a project, plans must receive approval from the Department in order to be eligible for tax credits. *Only construction-related costs for work to be accomplished can be submitted.*" It informed Dijas that in order to complete processing of its application, a revised and completed application had to be submitted along with its original application. It also requested documentation of property ownership. Dijas resubmitted its application with the requested information on October 1, 2007, further requesting an additional $262,500 for additional acquisition costs.[6] The Department acknowledged receipt of this application and assigned it control # 200711291524. Because Dijas had submitted the second application under the bakery's name and not its own, there were e-mails back and forth between Department personnel that a withdrawal letter had to be submitted for the second application for control # 200711291524 because it was a duplicate but with a different applicant name. Also contained within those e-mails were specific comments regarding the enterprise

---

4.  The Bakery was established in 1990 and is a kosher/all natural food manufacturer which sells its products throughout the east coast.

5.  On Attachment 1 of its application, Dijas indicated that it spent $1,050,000 under Land Acquisition (if applicable), $78,273 for New Construction and $5,200 for HVAC, seeking a total of $283,368 in tax credits. On Attachment 2 of the application, it indicated that it spent $1,050,000 under "Buildings" (if applicable).

6.  This application was in the name of Irene's Bakery and not Dijas, with Daniel Zelikovich signing as CEO and President. Zelikovich is the President of Dijas. The record indicates that the application was actually received by the Department on November 19, 2007.

zone tax credit requested indicating that only construction costs would be permitted and that information should be conveyed to Dijas.

Dijas withdrew the second application and was given an extension of time to submit the necessary information that was omitted from the first application. However, Dijas never provided documentation with the original or resubmitted application to prove that the property was purchased within the fiscal year July 1, 2007, through June 30, 2008.

Ultimately, the Secretary awarded Dijas tax credits in the amount of $20,868.25 based on 25% of its qualified expenditures/investment of $83,473 made for improvements for the period of July 1, 2007, through June 30, 2008. Believing that it was still owed $283,368 in tax credits, 25% for the acquisition costs of the building at $1,050,000, Dijas filed a petition for review with this Court alleging that the Department abused its discretion by disallowing acquisition costs for consideration which were incurred prior to July 1, 2008. It requested that we reverse the Department's determination and order the Department to approve the remaining amount of tax credits it requested in the amount of $283,368. In response, the Department filed a motion to quash that petition arguing that its offering of $20,868.25 in tax credits to Dijas was not an adjudication which could be appealed to this Court. We will first address the Department's motion to quash before addressing the merits of Dijas' petition for review.

■ The Department argues that not all decisions by a Commonwealth agency are adjudications subject to appeal, and only agency decisions that affect a party's legitimate expectations of personal or property rights are appealable.[7] The Department contends that Dijas has no entitlement to tax credits under the Act because a business is only eligible for tax credits (1) if the Secretary approves the proposal of the business, (2) the Department may limit the amount of tax credits it grants to any applicant, and (3) nothing contained within the Act requires the Department to grant tax credits in *any* amount to *any* applicant. Therefore, the Department's approval or disapproval of Dijas' application for enterprise zone tax credits is not an adjudication subject to judicial review because Dijas cannot have any expectation to receiving a tax credit and it is not a property right.[8]

---

**7.** The Department cites *Nitterhouse v. Department of General Services*, 706 A.2d 381 (Pa. Cmwlth.1998) for these propositions. In *Nitterhouse*, this Court held that a disappointed bidder/proposed lessor for state agency office space had no legitimate expectation of property rights in an award of a state lease and lacked standing to appeal. We concluded that the Department of General Services' decision not to award a lease was not an adjudication under the Administrative Agency Law affording Nitterhouse a right to appeal.

**8.** The Department further argues that our holding in *Jennison Family Limited Partnership v. Montour School District*, 802 A.2d 1257 (Pa.Cmwlth.2002), supports its position. That case involved a taxpayer who sought tax exempt status from the school district, the local taxing authority, for improvements to real property that the township designated as deteriorated property under the Local Economic Revitalization Tax Assistance Act (LERTA). The trial court granted summary judgment, the taxpayer appealed, and we held that the school district had discretion to grant tax-exempt status under LERTA; its refusal to grant tax-exempt status was not discriminatory; no lack of uniformity in taxation existed between two classes of deteriorated property; and denial of a hearing before the school district on tax exemption did not violate due process. Specifically, on the last issue, we held that there was no property right in a tax exemption because the exemptions had to be authorized by the school district, not the township, so neither a hearing nor adjudication was required. Not only does *Jennison*

Dijas disagrees, arguing that the Secretary's decision is an adjudication subject to judicial review because a tax credit is a reduction in tax liability. Dijas explains that a tax credit has value and a reduction in the tax liability of the taxpayer is a decision affecting the liability or obligations of the taxpayer. Because it affects the liabilities and obligations of the taxpayer, it determines the amount of money the taxpayer must pay and, therefore, is a decision affecting a property right.

Section 501 of the Administrative Agency Law, 2 Pa.C.S. § 501, provides the following:

> (a) **General Rule.**—Except as provided in subsection (b),[9] this subchapter shall apply to all Commonwealth agencies.

Subsection (b) exempts certain proceedings from the law, none of which have relevance here. Under this subchapter, a person is given the right to appeal from a final adjudication. "Adjudication" is defined as:

> Any final order, decree, decision, determination or ruling by an agency *affecting* personal or *property rights, privileges,* immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made. The term does not include any order based upon a proceeding before a court or which involves the seizure or forfeiture of property, paroles, pardons

or releases from mental institutions. (Emphasis added.)

2 Pa.C.S. § 101. Pursuant to this definition, we agree with Dijas that the Department's award of tax credits was an adjudication that was appealable to this Court because it was a final decision affecting Dijas' "privileges." "Privilege" is defined as "[a] special legal right, exemption, or immunity granted to a person or class of persons," Black's Law Dictionary 1215 (7th Ed. 1999), and "a right or immunity granted as a peculiar benefit, advantage, or favor." Merriam Webster Online Dictionary (*http://www.m-w.com*/209.161.27.11/dictionary/privilege). Because the Department made a determination regarding an award of tax credits, which are a privilege to receive and to which an applicant is entitled to appeal the determination to this Court if not happy with the decision, we deny the Department's motion to quash.

■ As to the merits of this appeal, Dijas does not dispute that it did not perfect its application before the Board by providing the deed to the property or any other documentation that would prove it purchased the building during the 2007–2008 fiscal year, the fiscal year in question. Nonetheless, Dijas requests this Court to reverse the Department's determination and order it to approve further tax credits in the amount of $283,368 for acquisition costs of the building by arguing that it was

---

not support the Department's position, but the facts are totally different and not comparable to those presently before the Court.

9. Subsection (b) provides:

> (b) **Exception.**—None of the provisions of this subchapter shall apply to:
> (1) Proceedings before the Department of Revenue, Auditor General or Board of Finance and Revenue, involving the original settlement, assessment or determination or resettlement, reassessment or redetermination, review or refund of taxes, interest or

payments made into the Commonwealth treasury.

> (2) Proceedings before the Secretary of the Commonwealth under the act of June 3, 1937 (P.L. 1333, No. 320), known as the Pennsylvania Election Code.
> (3) Proceedings before the Department of Transportation involving matters reviewable under 42 Pa.C.S. § 933 (relating to appeals from government agencies).
> (4) Proceedings before the State System of Higher Education involving student discipline.

not required to submit documentation to support the purchase of the building because the Department's August 2005 Guidelines upon which it relied did not include "acquisition" expenditures as eligible costs, but only specified construction-related costs as eligible costs. Instead, Dijas argues that the Department should have relied upon the August 2008 Guidelines which specified that eligible costs included "acquisition" expenditures.

Even assuming that the August 2008 Guidelines were the guidelines that should have governed, the Department denied Dijas' application on the basis that it did not provide the appropriate documentation to the Department as requested. The tax credits for the purchase of the building were discussed in a memo on March 6, 2008, between Department personnel, Joyce Hamm–Denton (Denton), a Program Specialist for the Department, and Jeff Darwak (Darwak), a Program Director for the Redevelopment Authority of the County of Bucks, in which Denton specified:

> Please make sure that all eligible (costs incurred during this contract year 7/1/07–6/30/08) total the amount of the actual investments made by Dijas to make permanent improvements to the building. I calculated the receipts included in both applications (the original submitted in July and the subsequent application submitted in November showing Irene's Bakery as the applicant) but find these receipts/invoices total amount less than $50,000 of eligible costs. **If the building was acquired by Dijas during the contract year and they seek those costs as part of the total project budget, proof of ownership/copy of the deed must be submitted.**

(Reproduced Record at 74a.) (Emphasis added.) The letter further added, "Again, if the building was acquired prior to July 1, the costs are not eligible; EZP consideration will be given to the rehab/construction costs only." The deed was never submitted.

Because it is within the discretion of the Secretary to award tax credits if and only if the applicant meets all of the necessary criterion to be awarded the tax credits, and Dijas failed to provide the documentation to prove that it purchased the building with the 2007–2008 tax year with the application, Dijas is not entitled to receive the additional tax credits.

Accordingly, the order of the Department is affirmed.

## O R D E R

AND NOW, this 28th day of April, 2009, the Department of Community and Economic Development's motion to quash the petition for review filed by Dijas Capital, LLC, is denied. The petition for review filed by Dijas Capital, LLC, is denied and the order of the Department is affirmed.